**Grey v LIC Dev. Owner, L.P.**

2025 NY Slip Op 31091(U)

April 3, 2025

Supreme Court, New York County

Docket Number: Index No. 151699/2022

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. ARLENE P. BLUTH**                    PART                      14

*Justice*

-------------------------------------------------------------------------------X

WILLIAM GREY on behalf of himself and all others
similarly situated,

| | |
|---|---|
| INDEX NO. | 151699/2022 |
| MOTION DATE | 03/31/2025 |
| MOTION SEQ. NO. | 003 004 |

Plaintiff,

- v -

LIC DEVELOPMENT OWNER, L.P.,

**DECISION + ORDER ON
MOTION**

Defendant.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 80, 91, 92, 98, 99, 100, 101, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 162, 164, 166, 167

were read on this motion to/for                        SUMMARY JUDGMENT                        .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 163, 165, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205

were read on this motion to/for                        SUMMARY JUDGMENT                        .

Motion Sequence Numbers 003 and 004 are consolidated for disposition. Defendant's

motion (MS003) to dismiss and for summary judgment and plaintiff's motion for summary

judgment (MS004) are both granted in part and denied in part.

**Background**

In this class action, plaintiff contends that defendant owns a massive building complex in

Queens that consists of over 1,800 apartments spread out across three separate buildings.

Defendant participated in the 421-a tax abatement program, a statutory framework that provides

significant tax breaks to developers and, in exchange, the apartments are rent stabilized. "Section

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**                    **Page 1 of 11**
**Motion No.  003 004**

1 of 11

[* 1]

421–a of the Real Property Tax Law provides for an exemption from local taxation for certain new multiple dwellings. It explicitly provides authority for a local housing agency in a city with a population of one million or more to exclude certain new multiple dwellings through the passage of a local law" (*Kew Gardens Dev. Corp. v Wambua*, 103 AD3d 576, 577, 961 NYS2d 48 [1st Dept 2013]). Buildings, such as the ones owned by defendant, receives property tax exemptions (the taxes get phased in over a specified time period) and, in exchange, the apartments are classified as rent stabilized. That means that any increases in rent are set by the Rent Guidelines Board ("RGB").

Plaintiff's theory in this case is that defendant attempted to circumvent the requirement that it register the rent actually charged and paid as the initial rent by offering what he characterizes as "preferential rent." He insists that defendant offered incentives, such as a free month, in order to entice a tenant to sign a lease but then registered the higher rent. For example, if defendant charged $3,000 per month in the lease but gave a free month, then the average monthly rent would be $2,750. Plaintiff insists that $2,750 should have been registered with DCHR but that defendant instead registered the $3,000. Plaintiff characterizes this practice as a massive windfall for defendant, who pays little to no taxes on these properties as part of the 421-a program, and yet is still improperly attempting to register higher rents.

Plaintiff was not the initial tenant in his apartment. Rather, the tenant who occupied the unit immediately prior to his tenancy was the first to move in. He contends that although the rent was registered as $3,690.00 for this lease dated April 29, 2018, the initial tenant received a credit of two months of free rent over a 14-month term in 2019 which meant she actually paid $3,162.86. The renewal rate was registered as $3,745.35 but, according to plaintiff, the prior tenant "may" have received a one-time concession to $3,960.00 which means the effective rent

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

Page 2 of 11

[* 2]

was $3,437.85 (an increase of about 8.7%). Plaintiff alleges that if the concession was not part of the renewal lease, the increase would have been $582.49 or 18.4%. Under either scenario, the rent increase would have far exceeded the amount allowed by the RGB that year of 1.5%.

Plaintiff insists that each of the leases and renewals at the buildings show a rent concession for every initial leaseholder. He observes that when he signed the lease his listed legal regulated rent was $3,745.35 but he actually paid only $2,407.73 per month when factoring in three separate concessions. Plaintiff argues that at the renewal of his lease, plaintiff increased the rent to $3,801.53, a 58% increase that exceeded the allowable amount under the RGB.

Plaintiff complains that some of the concessions used included an early occupancy rider which he maintains was an artificial construct that characterized tenants as licensees. He points out that this rider, which was apparently used for the prior (and initial) tenant in his apartment, removed the protections of rent stabilization which is not permissible and therefore renders it void. Plaintiff observes that where the early occupancy rider was not used, a concession rider was included that allegedly was a "no reason" concession rider, also something that is void. Plaintiff argues that a landlord must have a valid reason in order to offer a concession.

**The Parties' Contentions**

Defendant includes an affidavit from its Vice President, Mr. Benner (NYSCEF Doc. No. 44). He contends that the property was not completed at the time that tenants moved in, and so defendant offered tenants concessions (*id.* ¶ 5). Mr. Benner also observes that defendant offered concessions due to the COIVD-19 pandemic and that defendant simply made the prudent decision to offer concessions in order to prevent widespread vacancies (*id.* ¶ 8). He admits that the initial tenant in plaintiff's apartment was offered a one-time temporary rent concession of

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 3 of 11**

$3,690.00 for the month of July 2018 and that this was a straightforward pure rent concession (*id*. ¶ 29).

Defendant argues that nowhere in the relevant statute is there any prohibition on offering short-term rent concessions or an early occupancy agreement. It characterizes this offer as a "temporary waiver of rent which temporarily eases the tenant's rent burden." Defendant insists that all of the legal regulated rents at the new housing complex were less than the maximum permitted by HPD. It argues that it never misrepresented anything in the riders. Defendant also emphasizes that plaintiff offered nothing from someone with personal knowledge of the facts and only submitted an attorney's affirmation.

Plaintiff takes issue with the early occupancy rider that characterized the incoming tenants as licensees for a certain period of time. He claims that such an agreement is void because it purported to waive any rent stabilization rights acquired by the tenants in direct contravention to the terms of the 421-a program. Plaintiff theorizes that to permit such an agreement would allow any landlord to say a tenant is a licensee and therefore evict on only ten days notice.

Plaintiff claims that this Court should not offer any weight to Fact Sheet #40, the DHCR guidance applicable at the time the initial tenants moved into the properties. He argues that the DHCR did not include any rationalization or informed analysis and is not supported in any of the relevant statutes. Plaintiff also maintains that defendant failed to cite any evidence that it relied upon this fact sheet.

With respect to a damages calculation, plaintiff demands that this Court simply freeze the rent as the initial rent registrations were improper. He urges the Court to impose this freeze at

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 4 of 11**

4 of 11

what the initial legal regulated rent should have been and that defendant should pay any amounts collected over and above that figure.

**Discussion**

The Court observes that the Court of Appeals recently issued a decision that is directly on point. In *Burrows v 75-25 153rd Street, LLC* 2025 NY Slip Op 01669, the Court of Appeals affirmed the Appellate Division, First Department's determination "to dismiss with respect to one plaintiff's overcharge claim based on a two-month rent concession, holding that, as to that claim, the complaint was 'legally insufficient'" (*id*. at 4). The Court added that "Defendant's documentary evidence submitted with its motion to dismiss refutes plaintiffs' allegations that defendant improperly revoked a preferential rent upon plaintiff's lease renewal because, pursuant to agency guidance applicable at the time, plaintiff's rent concession was not a prorated concession but instead a limited concession for a specified period" (*id*.).

This Court finds that the concession issued to the initial tenant in plaintiff's apartment qualifies as a limited concession for a specified period under the *Burrows* decision and is therefore not evidence of an overcharge. The document (NYSCEF Doc. No. 139 at 60 of 63) states it is a one-time concession off the rent in July 2018. At that time, the applicable agency guidance was Fact Sheet #40, which provided that:

> "There are two types of rent concessions. One is a concession for specific months, as for example, where the lease provides that the tenant will not have to pay rent for one or more specified months during the lease term. This type of concession is not considered a preferential rent. The other type is a prorated concession, where the dollar value of the rent free month(s) is prorated over the entire term of the lease and not tied to a specific month or months. A prorated concession is really the same as a preferential rent and will be treated in the same manner" (NYSCEF Doc. No. 156).

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 5 of 11**

5 of 11

[* 5]

The Appellate Division, First Department has stressed that "We have previously credited DHCR's Fact Sheet #40 as a permissible interpretation of the law" (*Chernett v Spruce 1209, LLC*, 200 AD3d 596, 598, 161 NYS3d 48 [1st Dept 2021]). Although the First Department declined to dismiss the complaint in *Chernett*, the fact is that the two cases are easily distinguishable. In *Chernett*, the alleged scheme to artificially increase the initial legal regulated rent concerned construction concessions provided to tenants purportedly well after construction was complete.

The instant action contains no such concessions and the Court sees no reason to ignore the guidance offered in Fact Sheet #40 based on the appellate court's observation in *Chernett*.[1] Plaintiff is right that the early occupancy rider's characterization of the tenant as a licensee for the first 31 days (NYSCEF Doc. No. 139 at 62 of 63) is deeply concerning as it purports to contract away the tenant's rights under the rent stabilization laws despite the fact that defendant was receiving enormous tax benefits on the ground that the apartments would be rent stabilized. But this early occupancy rider has no material or dispositive influence on the issues here. That is, defendant did not rely on the fact that the tenant was allegedly a licensee for some period of time to evict that individual or to register a higher rent. In this Court's view, the key is that the rent concession (*id*. at 60 of 63) merely offered a free month. That comports with at least one other First Department decision which approved of a one-month rent concession while dismissing an overcharge matter brought in a 421-a building (*Flynn v Red Apple 670 Pac. St., LLC*, 200 AD3d 607, 161 NYS3d 35 [1st Dept 2021]).

The Court finds that, pursuant to the agency guidance at the time the lease was entered into, the use of a concession such as the one at issue was permissible and did not count as

_____

[1] Although defendant's VP alludes to construction and the pandemic as reasons for the concession, the concession itself contains no reference to these justifications. Plus, the initial tenant's lease is dated long before the pandemic.

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 6 of 11**

[* 6]

preferential rent. Therefore, the Court is unable to find, based on *Flynn and Burrows*, that the initial legal regulated rent was improper and that there was an overcharge. Put another way, when applying the binding caselaw, the Court finds that these were one-time concessions as opposed to an offer that should be viewed as preferential rent.

However, the agency guidance *changed* as of June 14, 2019. In the revised Fact Sheet #40, DHCR noted that "tenants that were paying a preferential rent as of June 14, 2019, retain the preferential rent for the life of the tenancy. Rent Guidelines Board increases and other increases allowed by the Rent Stabilization Law or Emergency Tenant Protection Act are to be applied to the preferential rent" (NYSCEF Doc. No. 157). The landlord was only allowed to charge the higher legal regulated rent following a vacancy; otherwise, any RGB increases imposed on the tenant were calculated from the preferential rent (*id.*). And, critically, any discussion about concessions was eliminated. DHCR observed that "A preferential rent is a rent an owner agrees to charge that is lower than the legal regulated rent they could lawfully collect" (*id.*). In this Court's view, that means that any concession is now viewed as preferential rent under this new agency guidance.

Here, plaintiff claims in his memorandum of law in support (NYSCEF Doc. No. 161) that at the renewal lease of the first tenant, the monthly rent was increased but the landlord "may have offered a one-time concession of $3,690.00, rendering the net effective rent $3,437.85. That is a $274.49 increase, approximately 8.7%. If the concession was not part of the renewal lease, the rent increase was $582.49, or 18.4%" (*id.* at 4). The renewal lease included in the record contains a rent concession, but it is dated from 2018 (i.e. the same date as the initial concession). Therefore, the Court grants summary judgment dismissing plaintiff's claim to the extent it is based on the renewal lease of the first tenant as it is not clear whether or not she actually

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 7 of 11**

7 of 11

[* 7]

received a concession in the renewal lease. For some reason, plaintiff did not include an affidavit from this tenant to clarify whether or not she, in fact, received a concession.

Plaintiff received significant rent concessions in the form of three separate concessions that reduced his effective rent to $2,407.73 when he signed a lease dated November 25, 2020 (NYSCEF Doc. No. 142 at 63 of 65). Pursuant to Fact Sheet #40 then in effect, therefore, any rent increases should have applied to this $2,407.73 amount. That did not happen as the renewal lease offered rent increase based on the $3,745.35. The Court therefore grants summary judgment to plaintiff only for those renewal leases after June 14, 2019 that did not treat rent concessions as preferential rent.

**Summary**

In contrast to other 421-a cases that have been litigated before this Court, this situation does not involve a concession based on something specific, such as ongoing construction, wherein the purported reason for the concession is allegedly false. Here, the concession was a pure rent concession, presumably meant to entice people to move in or keep them in and, according to the applicable case law that applied prior to the effective date of the HSTPA (the old Fact Sheet #40), landlords could readily offer one-time concessions without risking that such concessions would be deemed as preferential rent.

That means, for purposes of this case, any of the rent concessions issued prior to June 14, 2019 were permissible and do not constitute a basis for an overcharge. In other words, defendant was permitted to register the initial rent based on the amount listed in the leases in spite of the net effective rate actually paid by the tenants as it conformed with the DHCR guidance at the time.

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 8 of 11**

8 of 11

[* 8]

However, following June 14, 2019 and the applicability of the HSTPA, the new Fact Sheet #40 did away with any discussion of permissible concessions. In fact, this new agency guidance from DHCR expanded the definition of preferential rent to include any time a landlord charges less than the maximum amount allowed. And DHCR added that rent increases from the RGB were to be calculated from the preferential rent amount. Although the legal regulated rent amount was still retained, the landlord could only charge that amount (i.e. revert back to this higher amount) following a vacancy.

Here, that requires the Court to grant summary judgment to plaintiff on his overcharge claim to the extent that there were rent concessions offered to the class after June 14, 2019 that were not accounted for in the lease renewal. Plaintiff's situation described above is an easy example—he paid what amounted to a preferential rent (as defined by DHCR) of $2,407.73 but his rent increase was not based on this number. It was based on the much higher listed legal regulated rent of $3,745.35 (NYSCEF Doc. No. 143[ the renewal lease]).

Therefore, there shall be a trial on damages concerning the extent of the overcharge for leases or lease renewals that run afoul of the new Fact Sheet #40. The Court declines to impose the damages calculation suggested by plaintiff in Rent Stabilization Law § 26-517(e), which would impose a rent freeze based on the initial rents charged. Rather, the Court finds that the trial shall include an assessment of damages pursuant to 9 NYCRR 2526.1(a)(1). In particular, the Court finds that defendant established by a preponderance of the evidence that the overcharge was not willful through the affirmation of Mr. Benner—he maintains that the concessions offered during the post-HSTPA time period were due, in part, to the COVID-19 pandemic.

Accordingly, the Court finds that the damages formula shall be "the amount of the overcharge plus interest, which interest shall accrue from the date of the first overcharge on or

**151699/2022  GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 9 of 11**

9 of 11

[* 9]

after the base date, at the rate of interest payable on a judgment pursuant to section 5004 of the Civil Practice Law and Rules, and the order shall direct such a payment to be made to the tenant" (9 NYCRR 2526.1[a][1]). Plaintiff did not meet his burden to combat defendant's assertion that any overcharge was neither willful nor part of some scheme to charge higher rents.

The Court also observes that its analysis is limited to the arguments raised by the parties. In particular, plaintiff only adequately detailed the example of his apartment and the leases for him and the initial tenant. The Court did not do its own *sua sponte* examination of other examples of potential overcharges that may be located in the numerous exhibits attached. The Court observes that plaintiff did not offer any affidavits from any potentially affected class members, although such a showing was not necessary for this motion as the veracity of key documents was not sufficiently contested on this motion. In sum, it will be plaintiff's burden at the trial to prove the full extent of the damages in accordance with this Court's decision.

The Court, therefore, grants plaintiff's request for ledgers to the extent they are applicable to this decision (i.e. possible overcharges post June 14, 2019).

Accordingly, it is hereby

ORDERED that plaintiff's motion (MS004) for summary judgment is granted in part with respect to liability only to the extent that defendant overcharged tenants in the buildings in violation of the new Fact Sheet #40 for renewal leases that did not properly account for concessions that are now treated as preferential rent; and it is further

ORDERED that defendant's motion (MS003) for summary judgment is granted to the extent that plaintiff's claims based on the concessions offered to the initial tenants are severed and dismissed; and it is further

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 10 of 11**

10 of 11

[* 10]

ORDERED that defendant is directed to provide the ledgers requested by plaintiff to the

extent they comply with this Court's decision on or before June 25, 2025.

_____4/3/2025_____
**DATE**

_____
**ARLENE P. BLUTH, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**151699/2022   GREY, WILLIAM vs. LIC DEVELOPMENT OWNER, L.P.**
**Motion No.  003 004**

**Page 11 of 11**

11 of 11

[* 11]